Court of Appeals for the 4th Circuit Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention for the court is now sitting. God bless you. We are ready to hear argument in our first case, Cook v. the U.S. Mr. Cook. Good afternoon, Your Honor. You represent yourself. Is it appropriate for me to take off my mask? If you're comfortable, we are. Thank you, Your Honor. Good afternoon, judges of the 4th Circuit, and may it please the court. I want to first start by thanking the 4th Circuit for allowing us to argue here in person today. I was terrified at the thought of having to argue this case virtually, but even more so terrified of not being able to argue at all. So thank you so much for allowing us to be here in person today. My name is Richard Cook, the plan trustee for Yahweh Center, Inc., and I'm the appellant in this case. In the four years prior to filing for bankruptcy protection in 2016, the Yahweh Center incurred over $300,000 in tax penalties because it failed to timely withhold, pay, and file its payroll taxes. So have the underlying taxes been paid? Some. Not — there's still an outstanding claim to the IRS in the case of around a million dollars as far as a priority. That's unpaid withholding tax. That's correct, Your Honor. Okay. A portion of it has been paid throughout the Chapter 11 plan confirmation process, but there still remains — most of the priority claim of the IRS is still outstanding. So the penalties that are the subject here are over and above the actual underlying tax. Correct, Your Honor. In these — in the penalties that we're referencing here also, we're kind of going back in time as far as looking at these penalties, because more so than avoiding the incurrence of the penalties, once those penalties are avoided, the occurrence of those penalties is avoided, then payment on those penalties would also be avoided. And that's to — is to claw back the monies the Yahweh Center paid on these penalties in the four years prior to it filing for bankruptcy protection. Well, if — before you — this kind of relates, I think, to what you just said, but while they're connected, you claim both the incurrence of the obligation and the payment are both avoidable. Is that correct? Correct, Your Honor. And it's a — it's a two-step process. And I think — Let me just follow that. Maybe — maybe my questions will allow you to answer, and if not, I want to give you a full opportunity to. So please feel free at the end to say, hey, you didn't let me finish. I'm not trying to just avoid that. But looking at the North Carolina statute that the claim — underlying claim, if you're looking at, I guess, 3923.5? Correct, Your Honor. And if you are focusing just on the incurrence of the obligation, isn't the claim — the statute talks first about an obligation incurred by the debtor. That would be the tax penalty obligation, correct? Correct, Your Honor. And is voidable as to a creditor whose claim — and that claim would be the right to receive the tax penalties, right? No, Your Honor. I think that it's avoidable as to a creditor whose claim — I think an existing creditor of the Yahweh Center is — Well, the language is, is voidable as to a creditor whose claim arose before the obligation was incurred. So what's the claim? So the claim is actually the claim held by the North Carolina Department of Revenue. And so the North — For what? For unpaid taxes to them as well. Well, but you're not claiming — why would the claim not be the right to the penalty? It seems like you're — maybe I'm missing it, but it seems to me taxes — the tax obligations are dealt with separately by the bankruptcy code and the law under it. And that's not voidable. So taxes and interest aren't voidable. And your claim, it would seem — and if your claim is the tax obligation, that's — you know, we can go with that. But I think that gets you into some separate problems. I thought your claim was the claim to the — receive the penalty. It's not that? I think the way to look at the North Carolina avoidance statute, which we're using as applicable law here, it's the creditor itself. So when we talk about 544B1, there has to be a golden creditor who could utilize — so the golden creditor here would be the Department of Revenue, and that is who the creditor holding a claim under 39-23.5 is. It has to be an existing creditor of the debtor, because that's really the party withstanding to avoid the incurrence of the debt. So is the claim of the North Carolina Department of Revenue one that, in effect, knocks the IRS obligation out of any priority receipt or knocks them into another class? What does the golden creditor get out of this? So in this particular instance, Your Honor, the golden creditor would, one, avoid the incurrence of the obligation. So the tax penalties that were incurred in the four years prior to the bankruptcy case being filed, those would be nullified. So what? Does that increase the pot for payment to other creditors? Is that — is that the — is that what you're trying to get at? That's one point that we're trying to get at. The second point is — and there are courts — bankruptcy courts that have held to this — when you avoid the incurrence of an obligation, there's now no longer an antecedent debt for which payment was made on that obligation. So it's as if it doesn't exist. You know, avoid means to undo. It's a declaration. And so if there's no antecedent debt that you're making a payment on, then any payment that's being made was not for reasonably equivalent value. It was not reducing a debt that was owed. You want to avoid the obligations of an issue? I'm sorry. Say that again, Your Honor. You want to avoid the — you want to avoid the obligations from the very beginning, that they were void at the moment that they went on? Correct, Your Honor. So were you challenging all payments owed to the IRS pursuant to the bankruptcy plan? No, Your Honor. Just — just the penalty portions. Because the IRS — and they filed a proof of claim — Well, why aren't tax penalties seen as simply part of the overall tax debt owed by the debtor? They're broken up separately. So the proof of claim that the Internal Revenue Service filed in the case actually breaks up kind of separate columns for what they're owed and why. There is a separate column for penalties. And tax penalties have been treated separately from the overall tax debt. This dates back to the Bankruptcy Act of 1898, where the old Section 57J of the Bankruptcy Act of 1898 said noncompensatory penalty claims of a governmental unit could never have a claim in bankruptcy. They were barred from go. So penalties have been treated separately. The current code, does it differentiate in terms of the structure of credit or priority between IRS tax debt and IRS penalty debt? Well, I would think so, because IRS priority debt is not avoidable. Because IRS priority debt are the actual taxes and the interest. These absolutely provide value to a debtor. You know, this provides for the general welfare of the United States. I didn't look in the code, but it's — there's so many structures the code sets out with specificity. That's what I wanted to know, was whether or not the taxes are segregated out from the penalties in terms of the priority of payment. Yes, Your Honor. In the most specific place I can direct your attention is Section 726 of the Bankruptcy Code. That is the priority of payment in a Chapter 7 case. And so — and this priority of payment in a Chapter 7 case actually has to be followed in Chapters 11, 12, and 13 of the code under something called the best interest of the creditor's test. And so Section 726A — give me a second, Your Honor, and I'll give you the subsection. It's 726A-4. And so, in essence, you know, probably the very last claim to be paid in a bankruptcy case are claims for fines, penalties, exemplary and punitive damages. And so penalties are recognized in bankruptcy as having a almost dead last priority. The only claims to be paid after penalties are interest on claims and then money back to the debtor itself. And so this section of the Bankruptcy Code, 726A, was modeled — the legislative history of the Bankruptcy Code kind of pulls in Section 57J of how tax penalties themselves in the U.S. Supreme Court in Simonson v. Granquist in 1962 was clear under Section 57J. Tax penalties provide no value to a bankrupt debtor. In fact, all they do is punish the innocent creditors of the debtor. And so — Alito, I follow the logic of your argument. And having represented a number of bankruptcy trustees in earlier days, I understand the gradation of creditors and how that's been specified by Congress in the Bankruptcy Code. But notwithstanding all that, there doesn't appear to be any court that has considered this general issue that has agreed with your argument. That's true, Your Honor. And I point out in the brief there are some practical reasons why that is the case. First one is that it was not even clear until 2006 with the Katz bankruptcy decision that there was an express waiver of sovereign until 2006 that, yes, you can bring this — potentially bring this type of action. Similarly, the Bankruptcy Code itself, until 2006, you could only go back one year to avoid the incurrence of penalties or transfers. That was expanded to two years in 2006. But, you know, a Chapter 7 trustee is guided by the principle that they have to receive monies for the estate, not just themselves. And so in a case similar to this where there have been years of litigation, it is entirely possible the trustee would incur a legal bill that would just prevent any distribution to the other creditors of the estate. Is this a Chapter 7 bankruptcy or a Chapter 11? It's an 11, Your Honor. Okay. Well, that statute that you referred us to in the Bankruptcy Act a minute ago, 724A, and what it stands for is in connection with Chapter 7. What does that do to your argument? Your Honor, so the priority of payout of Chapter 7 is incorporated to Chapter 11. It's what we call the best interest of the creditors test. If you give me a moment, it's Section 1129A7 of the code, 1129A7A. And essentially that an impaired creditor in a Chapter 11 plan will receive at least as much as they would get in a hypothetical 7. And so basically you have to figure out, well, what are the classes of creditors going to get in a hypothetical 7, and then ensure you're meeting that baseline with your Chapter 11 plan. So yes, 726, you know, Chapter 7 is unique to 7, but that has been incorporated back into Chapter 11 with the best interest of the creditors test, Your Honor. Counsel, could I just go back to the question I started with, and I'm sorry, the North Carolina statute. So are you saying the claim of the creditor, there just has to be a claim? It's not any particular claim. You're just saying if a creditor has a claim, any transfer or obligation would be subject to this statute? That's correct, Your Honor. And so what it does is that it would the — Go ahead. Finish your answer, please. Well, I guess what I was going to say, Your Honor, I think that the purpose of the statute being structured that way is if you owe money to someone else — Right. — at the time that you are insolvent, which is what this statute requires, and you make a transfer or incur an obligation that was not for reasonably equivalent value, well, that particular creditor that you owed money to who didn't receive the transfer, they were the one harmed here. And it is that creditor that has the standing to bring that cause of action under North Carolina law. It seems to me the penalty — I mean, the penalty is a — under the claim priority statute that you referenced, this is a — seems like a separate obligation. It's treated differently than interest is treated different than the underlying obligation. And so that creditor isn't benefiting by the incurrence of another obligation. It's just another obligation. Now, the payment's a separate issue, but the incurrence of the obligation, I'm just having trouble understanding how that — you know, the policy or why that would matter at all. I mean, an obligation arises, it arises. And if it's valid on the date of filing, it's filing. And, you know, you've got to deal with payments based on things like fraudulent conveyances and preferences and all those sort of things. But anyway, it seems to me if you're going to say that the claim is just any claim — anyway, I just didn't — that doesn't make the statute seem to make sense to me, but maybe that's just because it's new to me. Briefly, Your Honor, I know I'm running out of time here. I think the policy perspective for that is what we kind of talked about for dilution, that if you incur a debt, I think an example would be, say, for example, a debtor incurred a promissory note for $100,000 and didn't receive anything for it. Like just the neighbor, you know, we took on this fictitious debt. Right. You know, if the debtor — the debtor is already insolvent, which is what the statute tells us, if that debtor later goes into, whether it's receivership or a bankruptcy, then now this — this debt, where it didn't provide anything, now it's going to share in this distribution as well, it's going to dilute the pot of assets when it didn't provide anything to the debtor for that. Okay. It's diluted the pot for the payments that are made, that have already been made. But I understand you say under the code the unpaid penalties would come after unsecured creditors? That's correct, Your Honor. So it's — you're trying to claw back the monies already paid. Okay. I got you. All right. Well, you've got some time left on rebuttal. Thank you, Your Honor. Ms. Wolitzer, we'll be glad to hear from you. Thank you, Your Honor. Good afternoon. May it please the Court. I'm Rachel Wolitzer, representing the Apple League of the United States. The trustee acknowledges that there are no cases in which tax penalties have been held to be voidable obligations under Bankruptcy Code Section 544B1. The Sixth Circuit and Southeast Waffle squarely held that tax penalties and penalty payments are not voidable under 544B1. The lower courts correctly held that under the — I've read that case, and they just sort of reached that conclusion. There's really no citation to the Bankruptcy Code for authority for their decision. The Southeast Waffles decision was based on a number of factors. The court first looked at the fact that no other cases had held that pre-penalty — pre-petition penalties could be voided. So the lack of authority — Well, that does get your attention as a judge. Excuse me? That does get your attention as a judge. Yes. There have been no cases that — I'm sorry. My question was more to, you know, what's the — you know, the Bankruptcy Code is so structured, and it has so many exemptions in it from different types of claims, like charitable contributions, that are not avoidable. But you don't find penalties in any of those lists. Well, there isn't — there aren't any sections that say that penalties are voidable. So — and there are, as I said, there are a number of factors that Southeast Waffles relied on. So I think what you look at is the trustee cites 57J of the Bankruptcy Act, which is the predecessor to the current Bankruptcy Code. In 57J, penalties were not allowable. So it was a blanket rule not allowing all penalties. Now, when Congress enacted the Bankruptcy Code, it eliminated Section 57J and its blanket disallowance of penalties. And as Southeast Waffles said, Congress specifically addressed the matter of noncompensatory penalties throughout the Bankruptcy Code, carefully differentiating the treatment of such penalties in different contexts, despite the specificity included elsewhere in the current Code. Congress included not one word about noncompensatory penalties in the Code's fraudulent transfer provisions. And this holding was backed up by the Supreme Court's decisions in Noland and CF&I fabricators, which held that a categorical reordering of the priorities set forth in the Bankruptcy Code is not permitted. So as the trustee pointed out, the penalties are afforded a lower priority in Chapter 7 cases. So that's a specific provision addressing the priority of the penalties. I think his claim here is that it includes voiding the outstanding obligations that are not paid. But his goal is to get back the monies that were paid as a voidable transaction under Section 544. Correct. So that's you might focus on that. If I followed his logic correctly, if you assume that there is a waiver of sovereign immunity under Section 106, then you're left with the question under this Uniform Voidable Transactions Act whether or not it fits. And I could see the argument being made under that statute, the North Carolina version. There was an obligation incurred, the tax penalty, and the debtor did not receive a reasonably equivalent value in exchange for the transfer of the obligation. So at least on the face of it, it would appear that penalties would fit under that definition. Thank you, Your Honor. So why wouldn't they? Okay. Actually, is it okay if when I'm going through the language, if I address the question by Judge Quattlebaum about that claim arose before the transfer? Okay. So when you go through 3923.5, okay, and when you get to the language whose claim arose before the transfer was made or the obligation was incurred, that language is simply addressed to the fact that this section applies to present creditors. And if you look at the heading of the section, it says, transfer obligation voidable as to present creditors. So whose claim arose before the transfer was made or the obligation was incurred just basically says to the reader this provision only applies to present creditors. So you agree with the trustee's explanation that as long as you're a present creditor and have some claim, that part of it is satisfied? Well, the hypothetical golden creditor, as he referred to the North Carolina Department of Revenue, would have a claim that arose before the transfer was made. The problem is penalties do not satisfy or do not really fit, as Southeast Waffle said, within the language if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation. But other than their ipsa dixit, I mean, why wouldn't it fit? Okay. I mean, it's an obligation, obviously, of the debtor, and they didn't get anything for it, you know, and this seems like some of these cases may have gotten off the rails because, you know, we're all used to talking about fraud and constructive fraud in sort of common law terms, but here we're purely statutory under what the definitions of the Bankruptcy Code are and under the definitions of this Uniform Voidable Act. So it looks like to me, at least on the face of it, that it fits the language under 3923.5a. So I guess what I'm looking for is why is that wrong? Okay. If you focus on the words in exchange for the transfer or obligation, that clearly denotes a transaction. So the constructive fraud provisions and the Voidable Transfer Act are aimed at transactions, commercial, contractual, voluntary transactions, because otherwise there's no exchange. And by logical extension, there's no reason why, if the trustee is correct that penalties fall within this, I mean that, yeah, the penalties fall within this, there's no reason why taxes wouldn't fall in this, because a debtor does not receive anything in exchange for paying taxes. The amount of a debtor's taxes is not determined by the value of services that the debtor receives. It's not an exchange. It's a statutory obligation. Well, he says what, Counsel Wood, I think the argument on that is, yeah, now whether it's a reasonable equivalent value may be a point there, but there's value that all receive as part of the general welfare, the social contract that we see. I mean, what about that? We can debate maybe the dollar-for-dollar aspect of it, but there's benefit that taxes provide to everybody. There's no distinction in the Internal Revenue Code between taxes and penalties. There are specific statutory provisions cited in our brief that say penalties are treated as taxes. The money all goes into the same pot, and all of that money goes to infrastructure and services. But taxes and penalties are distinguished in the Bankruptcy Code. Yes, in terms of priority. So penalties are given a lower priority than the tax, but that doesn't mean that they can be voided. And the very fact that they are given priority and that there are so many provisions in the Code that deal with penalties, well, if they were just going to be voided anyway, then why does the Code need to deal with them? As the Supreme Court said in Noland and CF&I, you can't just take all those provisions in the Bankruptcy Code that deal with the priority of penalties and say, oh, well, we're not going to look at those. We're going to make a blanket rule that penalties are voidable. So that's inconsistent with the Supreme Court law on that. And again, it's not an exchange. So you don't pay your taxes in exchange for a certain amount of services. So how can you say it's a reasonably equivalent value? So biological extension, the trustees' argument would result in the voiding of the taxes as well as the penalties. So just getting back to some of the other points covered, again, this is a Chapter 11 case, not a Chapter 7 case. So unless the trustee is expressly invoking 724 or 726, which he isn't, those sections do not apply. Well, he said the best interest of the creditor causes that 726A4 to be incorporated into Chapter 11, even though it's not a Chapter 11 section. What's your response to that? Yes, but again, thank you, Your Honor. Again, that's a priority provision, so it's not calling for the penalties to be voided. It's just saying they have a lower priority. That's the basic difference between the Bankruptcy Act in Section 57J and then the Bankruptcy Code, which was enacted in 1978, which got rid of 57J and instead of a blanket rule against penalties, allowed penalties in certain circumstances and said what the priorities were. The trustee's citation of CATS to support why there are no cases on this issue, that there are practical reasons why trustees haven't wanted to go after these penalties, well, first of all, the CATS case doesn't apply at all because it was decided it was a decision regarding states' sovereign immunity. It was not a decision regarding federal immunity, and the court specifically held that the states' sovereign immunity was limited. Plus, that decision was decided in 2006, so it's been some time since that decision was decided. Again, I'd like to go back to some of the other parts of the Southeast Waffles rationale. Again, if you even look at the Voidable Transfer Act, Section 39-23.65, there's a definition of when an obligation is incurred, and it says, an obligation is incurred if oral, when it becomes effective between the parties, or B, if evidenced by record, when the record signed by the obligor is delivered to or for the benefit of the obligee. Well, here, the penalty is not an oral obligation, so we look at B, but the penalty is not evidenced by a record signed by the debtor as obligee. Therefore, the debtor did not incur the obligation and did not incur the obligation for less than reasonably equivalent value. So this definition of when an obligation is incurred, again, clarifies the contractual nature of the exchange contemplated by the Voidable Transfer Act. Again, Southeast Waffles also relied, as did the lower courts in that case, on what the trustee claims is an overstated concern for the Pandora's Box of litigation that could result from allowing the voiding of penalties. First of all, this would apply to all kinds of penalties, not just tax penalties, and the concern is also addressed to the proliferation of litigation that would result from trustees and debtors trying to avoid penalties. One of the purposes of bankruptcy is an orderly and efficient administration of the estate, and if every time there are penalties of any kind that would cause debtors and trustees to try to avoid them, that would really increase the litigation that bankruptcy courts have to deal with. But there are a lot of policies the bankruptcy code addresses. It addresses the equal distribution to the creditors. It effectuates fresh starts. I mean, it's hard to pick out one policy and say that drives because it seems to kind of cut both ways. It seems to me that, I mean, I thought that it seems like you'll both agree that the claim is just the existence of a present creditor, and if that's the case, your argument hinges on us, hinges on the fact that you can kind of imply through the act that there's this violation. It's a voluntary exchange requirement as opposed to the taxes just being different. And I've read the briefs and read it, and I get the point. That's, you know, on the other side of that, it would have been pretty easy to exclude, to make that clear in the bankruptcy code. So we're kind of reading tea leaves a little bit on the one hand when it's not that clear from the actual text. I just think it was never even contemplated that anyone would try to void these penalties, as is shown by the fact that there's no case law on it. So it just doesn't, as the Southeast Waffle Court said, it doesn't fit. This provision, again, it's not reading into it the language that requires an exchange, which is clearly a contractual concept. So there has to be an exchange for reasonably equivalent value. So, okay, penalties. You would have thought, though, that in a rational world, which we're dealing with Congress, when they took 57J out, there would be some legislative history statement that said this continues over in another section, or we're taking this out to treat penalties differently. There isn't anything. So you're left to guess as to what the congressional intent was. Well, again, you look at the entirety of the bankruptcy code and all the different provisions that address penalties. So as examples of some of these, 503B1C allows post-petition tax penalties as an administrative expense. Section 505 provides for the determination of the amount or legality of any tax or tax penalty. 523A7 provides that tax penalties are nondischargeable if the underlying tax is nondischargeable. And Section 724A provides that the trustee may void a lien securing a penalty claim in a Chapter 7. And as the trustee mentioned, 726A4 gives fourth priority for noncompensatory penalties in Chapter 7. So is your point that if the trustee's right, tax penalties would always be voidable, taking his argument to the conclusion, and then why would he have all these provisions that deal with tax penalties as part of the estate? Is that your argument? Yes, exactly. Because, again, the Supreme Court in Nolan and CF&I fabricators held that a categorical reordering of the priorities set forth in the Bankruptcy Code is not permitted. So 57J disallowed all penalties. The Bankruptcy Code does not. It has specific provisions that address the penalties. And also, by the way, the Simonson and Alia cases were both decided under 57J. And those cases are cited by the trustee. So if there are – I see my time is up if there are no further questions. Thank you very much. Mr. Cook, you've got some rebuttal time. Thank you, Your Honor. I wanted to address a point that you had brought up as far as legislative history, Judge Agee. There actually is legislative history with regards to 57J when the Bankruptcy Act switched over to the Bankruptcy Code. The statement in the legislative history, and I'm just going to read verbatim here, says the subsection follows the policy found in 57J of the Bankruptcy Act of protecting unsecured creditors from the debtor's wrongdoing but expands the protection afforded. And this is actually in relation to the new 724A of the Bankruptcy Code. And so it was adopted as part of the Bankruptcy Code, this protection from 57J. And it was expanded in that tax liens that include penalties, a seven-trustee can automatically avoid those and preserve it for the benefit of an estate. And so – Well, if the tax penalties are void or voidable under your theory through 544, why did Congress include all these ordering provisions for penalties elsewhere? Your Honor, I think it's more of a limited basis when, if the reasoning of the trustee is followed here, we're still limited to certain situations when this can happen. We're still, one, looking at generally a four-year look-back period, which is based on state law. I think there's a couple states that include six years. So it's still, one, you can only go back so far. The second thing requires the debtor would have to have been insolvent at that time. So you're going to have to have evidence that the debtor was insolvent at the time that the obligation was incurred. So that's another requirement. Additionally, you're going to have to show that there was a creditor that was owed at the time that the debt was incurred. So there's still a lot of evidence that is still going to need to be put forth and limiting circumstances to where this isn't just going to be a broad-brush open season of avoidance here. But any of the other things that I get, I understand those points. There are factors. But the proposition of no value received would apply across the board. You might have, for a penalty, right? I think for a tax penalty, yes. And I think tax penalties are unique here in that, so Section 505 of the Code is very It actually allows a bankruptcy court to basically sit as a tax court, that a bankruptcy court can basically go back in time and determine the propriety of any tax or penalty, whether it's been paid or not, whether it's been assessed or not. And so I think that it's just unique to the issue of tax penalties because, you know, we have 57J, you know, we have Simonson v. Granquist from 1962 that understands tax penalties don't provide value. Section 505 of the Code, again Let's say it's a penalty from the EPA or a State Water Control Board or the Securities Exchange Commission. Wouldn't your theory be equally applicable to those? If it is a non-compensatory penalty, that's correct. I think it would. Now, it's possible. Now, the Bankruptcy Code recognizes under 507A8G that compensatory penalties actually have a higher priority under the Bankruptcy Code. So there still has to be a determination of, is it a non-compensatory penalty? Is it a compensatory penalty? And so I just don't think it's a little bit of a hyperbole to say that this is going to be a Pandora's box because it assumes Congress didn't intend for this. But Congress intentionally waived sovereign immunity as to these types of causes of action. Would there – what about contractual fees or penalties? Would your argument apply to that? Correct. And that was actually something that was done in this particular case as well. So if you have a lease that says you pay X amount a month and you don't pay and a penalty is assessed to it, even though that's part of the contract or a mortgage that says that there's interest and, you know, if it were to contractually say you have a fee if you don't pay the amount, you're saying that that would be no value either, no reasonable equivalent value either? I do, but for different reasons. So situations like that, North Carolina is a good Now, liquidated damages, it will. But just a pure penalty, it won't. It won't compensate. And that actually dates back, and I included it in the brief, you know, this goes back to English common law of the 17th century, that contractual penalties are just not enforceable anyway. And so that's more of a common law concept. And so I don't think this is now going to mean, oh, these additional penalties are going to be avoided here. I think parties were able to do that anyway. But in this particular case, there were some penalties that were assessed by SunTrust Bank, and there was, ended up having to go up on appeal before the district court. The district court actually reversed in my favor, and we settled it. But yes, that has been used or could be used, and it actually has been done in this particular case. I want to address a couple points from the Southeast Waffles case. One, the court was clear in Southeast Waffles there was no fraudulent obligation cause of action in front of it. You know, in this case, it is in the complaint because you have to, one, avoid the incurrence of the obligation before you can then recover and avoid any of the payments made on the obligation. So the court in Southeast Waffles was crystal clear that this debtor had not pled a cause of action to avoid the incurrence of the obligation, which all these avoidance statutes state you can avoid an obligation or transfer. It didn't do that. I also want to point out that it makes a big deal about were there an involuntary creditor, the IRS. You know, they're just doing their job assessing these penalties. Well, voluntary and involuntary is kind of a big deal in bankruptcy. Like, the code will define whether it's a voluntary or involuntary transfer. You know, there are sections of the code 522 where an actual bankruptcy, an individual bankruptcy debtor can undo transfers that a trustee could do if it was an involuntary transfer. You look at section 301 of the code, it talks about voluntary bankruptcy filings. You look a couple sections later, involuntary bankruptcy filings. And so there is a distinction between involuntary and voluntary that the code, the bankruptcy code makes statutorily. And so that's, that is intentional. There's, you don't see voluntary and involuntary in 544B1 or the North County Affordable Transactions Act. Additionally, it makes a point to say, well, these were legitimate debts. They were legally incurred. Well, that was actually written out of the Bankruptcy Act. The Bankruptcy Act, the older version, 70E, this golden creditor statute, said debts that were legally incurred could not be avoided. Well, that was written out in the new section 544B1. There is no, if it was legal when incurred, it is valid. And so if there are no more questions, we'll just ask that the opinions below be reversed. Thank you, Judge. Thank you very much. Our normal court practice is to come down and greet counsel in person. COVID is preventing us from doing that. So we thank you for your arguments.
judges: G. Steven Agee, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.